**Jim David ROSS and Wanda Jean Ross, Plaintiffs-Respondents,**

v.

**James E. McNEAL and Barbara J. McNeal, Defendants-Appellants.**

**No. WD 31567.**

Missouri Court of Appeals, Western District.

June 2, 1981.

James T. Buckley and David C. Jones, Brown & Buckley, Sedalia, for defendants-appellants.

J. R. Fritz, Sedalia, for plaintiffs-respondents.

Before MANFORD, P. J., WASSERSTROM, C. J., and NUGENT, J.

NUGENT, Judge.

This is an appeal on behalf of defendants James E. and Barbara J. McNeal from the judgment of the circuit court which held that title to a disputed strip of land had vested in the plaintiffs Jim David and Wanda Jean Ross by adverse possession. The circuit court also found that the plaintiffs had sustained damages in the sum of $275.00. We affirm.

The Rosses filed suit on May 25, 1979, in Pettis County against James E. McNeal, Barbara J. McNeal, Adam B. Fisher, Trustee, and Missouri State Bank alleging ownership of land roughly six to ten feet in width on the north side of their lot 14 in block 1 of Westview Addition, a residential section of Sedalia, Missouri, lying next to lot 15 owned by the McNeals. The Rosses also prayed for damages in the sum of $1,000.00 for the acts of the McNeals in removing the plaintiffs' fence, trees and bushes from that land. The defendants filed a general denial. Trial was held on September 9, 1979. Applying the standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. en banc 1976), we affirm the judgment of the trial court.

In 1962 James and Lillian Ross, parents of Jim Ross, by a contract for deed purchased lots 13 and 14 in Westview Addition from Helen Bond, the record owner. The elder Rosses lived in a house on lot 13 until 1964. Subsequently they rented the house

to various tenants. In 1967 Jim Ross took over the payments on the contract for deed. Upon fulfillment of that contract in May, 1974, Jim and Wanda Ross obtained a warranty deed from Mrs. Bond and constructed a house on lot 14.

Imbedded in the alley near the eastern boundary of lots 14 and 15 is a metal fence post, located approximately ten feet north of the actual survey line between the two lots. On the western boundary of lots 14 and 15 is an oak tree, located six feet north of the actual survey line. Both monuments were present in 1962. Neither Jim Ross nor his father had a survey made to determine the boundary line; nor did either Ross have an express agreement with anyone regarding the line. Both assumed, however, that the boundary line was the line between the tree and the fence post. From 1962 until this controversy, they treated the tree-post line as the boundary by mowing to the line, clearing the brush and gardening in that area, and cultivating rose bushes and trees. Jim Ross constructed a fence some three feet south of that line and a sidewalk six feet south of the line. The house the Rosses built in 1974 was later determined by survey to be less than one inch from the actual platted line.

After 1962 only Jim Ross and his father maintained and improved this strip of land. Two witnesses, owners of lot 15 from 1954 to 1969 and from 1973 to 1978, testified that although they had no express agreement with either Jim or his father, each had assumed that the tree-post line was the boundary and conducted no activity on land south of it.

In May, 1978 the McNeals purchased lot 15. They had the property surveyed and discovered the actual boundary line to be six to ten feet south of the tree-post line. In order to be in compliance with local zoning setback requirements, the Rosses offered to buy a six-foot strip of the land. The McNeals refused to sell more than a three-foot strip. Laying claim to the disputed area, the McNeals, over a period of three months, removed the Ross' rose bushes, trees, fence, and sidewalk and erected a woven wire fence within a few inches of the Ross home.

The McNeals now assert that the trial court erred in each of the following ways: first, in failing to make a determination as to all the elements of adverse possession; second, in holding that the Rosses were in hostile possession of the land; and third, in finding the possession to be adverse when the intentions of the plaintiffs to hold land beyond the true boundary line was not manifested in a fixed visible boundary line. Finally, the McNeals argue that the trial court erred in holding them liable for damages to the property when those damages occurred prior to the final determination of adverse possession.

Before final submission of the case, counsel for the McNeals made a general request for written findings of fact and conclusions of law. The trial judge did so prefacing his conclusions with a detailed summary of the facts and testimony of the witnesses. Noting that to acquire title by adverse possession the claim must have been actual, open and notorious, exclusive, continuous, and hostile, the trial judge found the only major issue to be the hostile nature of the Ross' claim. Although the McNeals do not now dispute the open and notorious elements of the adverse claim, they complain that the court should have made a determination as to their existence. In addition, they argue that there was insufficient evidence to establish the actual and exclusive elements.

This court addressed the issue of the sufficiency of the findings of the trial court in *First Florida Building, Inc. v. Safari Systems, Inc.*, 570 S.W.2d 728 (Mo.App. 1978), at 730:

First Florida takes exception to the court's failure to make findings of fact although allegedly requested by counsel to do so. The record fails to support First Florida's assertion that it made such a request. The transcript shows only that "Plaintiff files Request for Opinion." Rule 73.01–1(b) [1] provides that in a court tried case, the court shall file a brief

1. Now Rule 73.01(a)(2).

opinion containing the grounds of decision if so requested by any party and shall, *if requested by counsel,* include finding "on such controverted fact issues *as have been specified by counsel*" (emphasis added). Counsel here requested an opinion and the court complied. Counsel did not specify any controverted fact issues upon which it requested findings, and the trial court cannot be charged with error for not making findings which were not requested.

Moreover, even if a request for specified findings had been made, a failure to comply would not constitute reversible error, and all fact issues would be considered as having been found in accordance with the result reached. (Citations omitted).

■ The elements of actual and exclusive possession were defined in *City of South Greenfield v. Cagle,* 591 S.W.2d 156 (Mo. App. 1979), at 159:

What acts will characterize possession as "actual" depend on the nature and location of the property, the uses to which it can be applied and all the facts and circumstances of a particular case. *Allen v. Wiseman,* 359 Mo. 1026, 224 S.W.2d 1010, 1013 (1949); *Frazier v. Shantz Real Estate & Investment Co.,* 343 Mo. 861, 123 S.W.2d 124, 131–132 (1938). Intervenor exercised the normal incidences of possession to a residential front yard. She arranged for having it mowed, planted decorative trees, and used it to travel across, including going to her garden. No one else, for at least 17 years, exercised any rights of possession over the premises. We believe that under the circumstances here, the use of the property showed that intervenor had actual possession from 1954 until 1971.

. . . .

"Exclusive possession", for the purpose of establishing adverse possession, means that the claimant holds the possession of the land for himself as his own and not for another. *Walker v. Walker, supra,* 509 S.W.2d at 106. All of intervenor's acts were for herself and she considered the property a part of her front yard. She was not intending to hold possession for anyone else. This was not disputed in the evidence. Exclusive possession was sufficiently shown.

The record of the proceedings convinces us that the trial court's judgment is supported by the substantial weight of the evidence showing that the Ross' claim was actual, open and notorious, exclusive, and continuous.

The McNeals next contend that although the Rosses may have occupied the disputed strip of land, they intended to claim only to the true boundary line. Such a frame of mind, according to the McNeals, is insufficient to establish the "hostile" nature of the possession. The Supreme court in *Walker v. Walker,* 509 S.W.2d 102 (1974), at 106, defined hostile possession as "possession opposed and antagonistic to the claims of all others, and imparts the occupation of land by the possessor with the intent to possess the land as his own." The court gave this explanation at 107:

If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse. It is not necessary that he intend to take away from the true owner something which he knows belongs to another, or even that he be indifferent as to the facts of the legal title. It is the intent to possess, and not the intent to take irrespective of his right, which governs.

The evidence in the present case is uncontroverted that from 1962 until the present dispute arose, Jim Ross and his father possessed and intended to claim all of the land in question regardless of the true location of the boundary line. Both Jim Ross and his father testified they assumed that the general line formed by the oak tree and the fence post represented the northern boundary of lot 14 and so claimed all the area south of it. They treated the area as their own by keeping it clear of brush, mowing it, periodically maintaining a garden there, planting and cultivating rose bushes, flowers and trees on it, and constructing a fence

some three feet south of the tree-post line and a sidewalk some six feet south of that line.

Most conclusive of the Ross' intent to claim this area as their own is the fact that in 1974 they constructed a new house less than one inch from what was later determined by survey to be the actual line. Otherwise, one would be forced to the conclusion that they constructed the house with the intent to claim only to any true boundary line as might be determined in the future, even though such a determination might place the house in violation of the six feet zoning setback requirement and prevent them from having access to the north side of their house. Therefore, we find the evidence sufficient to support the trial court's finding that the Ross' possession of the land was hostile.

The McNeals argue that the trial court erred in holding that plaintiffs' possession was adverse, because their intent to claim land beyond the actual survey line was never manifested in a fixed, visible, and ascertainable line. The general line formed by the tree and the post, defendants urge, fails to meet that alleged requirement, because fences built by the Rosses were not on the tree-post line and the Rosses never had an express agreement with anyone which would have fixed the line. The McNeals appear to define the fixed, visible, ascertainable line requirement to be some kind of physical barrier. No Missouri cases support such a proposition.

■ The record clearly establishes that the general line formed by the tree and post was a fixed, visible and ascertainable line, one recognized by the parties and their predecessors in interest. While an act such as fencing is one of the strongest indications of adverse possession, *Albert v. Declue*, 526 S.W.2d 39, 40 (Mo.App. 1975), we have found no per se rule requiring a boundary line to be marked by a physical barrier.

■ The undisputed testimony of two of the McNeals' predecessors in interest was that they consistently mowed to the tree-post line—one mower-width south of the tree on the western side, and never occupied or used the area south of that line. Such a longstanding practice is sure evidence that the tree-post line was certain and capable of location. Therefore, the trial judge correctly concluded that the Rosses be granted title to "that portion of lot 15 lying south of a line running from a steel post in the east boundary of said lot ten feet north of the northeast corner of lot 14 to a point in the west boundary of said lot 15 four feet north of the northwest corner of lot 14 (being a mower's width south of a point even with the oak tree) . . . ." Simply because the land claimed by the plaintiffs was not physically enclosed does not render the line incapable of location and description.

■ Finally, the McNeals argue that they should not be held liable for damages for removing the various improvements on the land in question. At the time of removal, the McNeals were still record owners of the land. Therefore, they maintain that they should not be held liable for such acts committed prior to filing of Ross' petition.

We find, however, that title to this land had vested in the Rosses by adverse possession before the McNeals damaged the property. In *LaGrange Reorganized School District No. R–VI v. Smith*, 312 S.W.2d 135 (Mo. 1958), the court held at 139 that:

> As to the land, adverse possession for the statutory period establishes an indefeasible legal title in the possessor, the title of the record owner is divested and, unlike the easement cases, that title is not lost by abandonment or mere failure to assert title after it has been perfected. (Citations omitted.)

Because of that, the McNeals' actions on the Ross property constituted a trespass. Although the Ross' petition does not specifically allege a trespass on the part of the McNeals, the allegations made invoke substantive principles of law that entitle the Rosses to relief in the form of damages for trespass. *City of Kansas City v. Mary Don*, 606 S.W.2d 411 (Mo.App. 1980). The actual

damages awarded by the trial court are supported by the record.

Judgment affirmed.

All concur.