A. CHARLES BUSSEN TRUST,
Plaintiff-Respondent,

v.

Clarence J. KERTZ and Mary Kertz,
Defendants-Appellants.

No. 51120.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 3, 1987.

Eric Charles Harris, Private Atty., Flat River, for defendants-appellants.

Kent D. Kehr, Private Atty., St. Louis, for plaintiff-respondent.

DOWD, Judge.

Defendants appeal from the judgment of the trial court quieting title in plaintiff-respondent to a five acre tract of land situated between respondent's and appellants' property. The trial court found respondent was the record owner of the disputed area pursuant to a deed and further concluded that respondent had acquired title to the tract by adverse possession.

Respondent and appellants are adjoining landowners who share an east-west boundary line dividing respondent's southern border from appellants' northern border. Appellants contend this east-west boundary line corresponds with the Koen survey line which extends one hundred feet to the north of the Donze survey line claimed as the boundary line by respondent.[1]

The plaintiff-respondent in this case is a trust created under the will of A. Charles Bussen, who died on April 30, 1978. Mr. Bussen bequeathed all real property he owned to Kent Kehr, as trustee for the benefit of his widow and certain other beneficiaries. Among the real estate so included were two parcels of land in Ste. Genevieve County which Mr. Bussen had purchased from Felix Bequette.

Prior to the sale to Mr. Bussen, Felix Bequette owned a 180 acre triangular-shaped parcel of land which adjoined the Mississippi River to the north. Mr. Bussen acquired the widest and most northerly portion of the triangle, purchasing 56 acres in 1944 and 20.25 acres in 1948. In 1955, appellants purchased the remaining 100 acres from Bequette which constituted the narrower and most southerly portion of the triangle. The southern line of the Bussen property adjoins the northern line of appellants' tract. The eastern line of the entire triangular tract adjoins the western line of the "Fallert Property." (See our diagram based on facts in the record).

---

1. Initially it should be noted that the fact portion of this opinion was very difficult to prepare due to the method of testimony at trial. The testimony adduced at trial was made in reference to diagrams and maps. A record on appeal with testimony such as "here to here," "down this way," and "up along here," is meaningless unless specific reference to a designated point is made in the record. The attorneys at trial must keep in mind the possibility of appeal and should clarify the record accordingly.

N ↑

MISSISSIPPI RIVER

Respondent's TRACT

Northernmost Corner U.S.S. 253

KOEN SURVEY LINE

DISPUTED AREA

DONZE Survey LINE

Appellants' TRACT

FAllERT PROPERTY

●→ HopkiN's CORNER

All of the deeds in this general area of Ste. Genevieve County refer to the northernmost corner of U.S. Survey 253 (hereinafter "U.S.S. 253") as their beginning point. To measure a given distance from this northernmost corner of U.S.S. 253, however, one encounters the steep bluffs of the Mississippi River. The dispute here can be attributed to this difficult topography.

One of the oldest deeds for property in the area is the deed to the "Fallert Property." The western line of the Fallert Property adjoins the eastern line of the tracts owned by appellants and respondent. The Fallert Property's western line begins at the northernmost corner of U.S.S. 253 and runs to a point known as Hopkin's Corner.

The Fallert Deed described the distance from the northernmost corner of U.S.S. 253 to Hopkin's Corner as being 2164.80 feet. Modern electronic surveying techniques, which can more accurately measure the steep bluffs, have found the actual distance between the northernmost corner of U.S.S. 253 and Hopkin's Corner to be 2263 to 2269 feet, a discrepancy of approximately 100 feet from the Fallert Deed description. The area in dispute here is a one hundred foot wide tract that adjoins this Fallert line to the west.

When Mr. Bussen purchased the northern portion of the triangular tract of land from Bequette, he hired Raymond Donze to survey the property and prepare the deed descriptions. Bequette and Bussen instructed Donze which parcel of land was to be conveyed by walking the land with him and pointing out where they wanted the boundary line to be established. They decided a fourteen inch white oak tree would be the location of the southeast corner of Bussen's land.

Both of Bussen's deeds indicate that the eastern line of Bussen's land runs for a distance of 13.12 chains (865.92 feet) from the northernmost corner of U.S.S. 253 to a stone. The deed conveying the balance of the tract to appellants described all of the approximately 180 acres originally owned by the Bequettes and then excepted the property conveyed to Mr. Bussen by reference to the Bussen deeds and the book and page numbers on which they are recorded.

An unrecorded plat prepared by surveyor Donze indicated that the southeast corner of Bussen's land, marked by a stone, was located 19.68 chains (1298.88 feet) northeasterly from a stone marking the southwest corner of the Fallert Property, known as Hopkin's Corner. Donze testified that,

instead of starting at the northernmost corner of U.S.S. 253 and confronting the steep bluff, as the deed description states, he actually began at Hopkin's Corner and measured northeast to the fourteen inch white oak tree which Bequette and Bussen had agreed would be the southeast corner of Bussen's land. This measurement was 1298.88 feet. He then subtracted this distance from the distance given in the Fallert Deed for the measurement from the northernmost corner of U.S.S. 253 to Hopkin's Corner, the difference being 13.12 chains or 865.92 feet.

Because all of the deed descriptions in the area purported to begin from the northernmost corner of U.S.S. 253, Donze described Bussen's southwest boundary to be 13.12 chains from that corner. In fact, Donze never did measure the distance from the northernmost corner of U.S.S. 253 to the white oak tree. The one hundred foot error in the old Fallert Deed measurement from the northernmost corner of U.S.S. 253 to Hopkin's Corner resulted in a one hundred foot discrepancy in the Donze survey and legal description and provides the root of the dispute here.

In 1977 or 1978, Harold Koen and his son Donald Koen surveyed the adjoining property to the east, the "Fallert Property," for Marblehead Lime Company. Shortly thereafter a dispute arose as to the boundary between appellants' and respondent's property. In 1978, appellants hired the Koens to survey the boundary line between their property and the Bussen property. The survey performed by the Koens indicated that the line dividing the southern part of the Bussen property from the northern portion of the Kertz tract was located approximately one hundred feet north of where respondent claimed it was located and where the unrecorded Donze plat placed the line.

In their effort to relocate the southeast corner of the Bussen tract, the Koens adhered strictly to the deed description and measured 13.12 chains from a point contended by them to be the northernmost corner of U.S.S. 253. At the time of the

Koen survey, however, there was no monument marking the northernmost corner of U.S.S. 253 and the Koens attempted to re-establish the corner through reliance on a 1950 survey by Vandergriff. The testimony at trial indicated there were several errors in the Vandergriff survey which resulted in the inaccuracy of his attempt to re-establish the northernmost corner of U.S.S. 253. The Koens did not find a stone at the point they contend to be the southeast corner of respondent's land.

In 1978, when appellants first raised a question about the location of the boundary line, Rodney Linker, an engineer for Tower Rock Stone Co. (hereinafter "Tower Rock"), respondent's lessee, went to the area of the southeast corner of the Bussen property. He measured 19.68 chains, the distance given in Donze's unrecorded plat, northeasterly from a stone he believed to be Hopkin's Corner. At 19.68 chains he came upon a white oak tree twenty inches in diameter. The Donze plat, made approximately thirty years previously, indicated a fourteen inch white oak tree was located 19.68 chains from Hopkin's Corner. Appellant was present and observed while Linker attempted to find a stone in the area of the white oak tree. A stone was not found. A picture was taken on this day, a Friday, showing appellant kneeling at the base of the white oak tree. Appellant told Rodney Linker at this time that he was always told the white oak tree was near the boundary line.

By Monday, the white oak tree was gone and the area where the tree had stood only days before had been bulldozed and graded over. In a deposition read into evidence, appellant admitted that a worker he had hired to clean out the fence row had removed the tree. In so doing, as respondent's counsel noted at trial, appellant acted contrary to the bible's commandment: "Thou shalt not remove thy neighbor's landmark which they of old time have set in thine inheritance."

Competent evidence showed that this white oak tree had long been recognized as the dividing line between the parties' property. Since 1955, appellants leased from Bussen an open field for farming located on the eastern portion of Bussen's property. This field was fenced along its southern border. Aerial photographs dating from 1959 to 1973 show a sharp color demarcation between the field and the land to the south so that the southern boundary of this field corresponds with the Donze survey line.

Bussen operated a quarry on the western portion of his land. The same aerial photographs show the quarrying activity extended into the disputed area since 1959 and continued to expand through the years. In 1972, Bussen entered into a mineral lease with Tower Rock, giving Tower Rock the right to quarry rock on part of the Bussen property which adjoined the ground owned by appellants. Tower Rock continued to clear the land and excavate rock within the disputed area. By 1978, at or about the time the boundary dispute arose, Tower Rock had excavated out almost down to the Donze line.

The evidence showed a fence, which ran along the Donze survey line and lined up with the white oak tree, had existed for some period of time. Cletus Whelan, president of Tower Rock testified that the fence was already in existence when he entered into the lease agreement with Bussen in 1972. There was also evidence that appellants agreed the fence provided the boundary line. Jim Schroeder, supervisor for Tower Rock testified that he had asked appellant whether he could take the fence down that ran along the Donze survey line and appellant replied that would not be a problem because the boundary line was supposed to be between or along the fence row down to the white oak tree.

The evidence also showed that prior to commencing quarrying operations in the disputed area, Tower Rock placed drill steels in the ground and scraped a line with a tractor to mark the division line between the Bussen tract and appellants' land. Appellants did not voice any objection when the line was scraped.

After the boundary dispute arose in 1978, Tower Rock entered into a mineral lease agreement with appellants and paid appellants royalties for rock excavated from the disputed area. Tower Rock also paid appellants for damage it did to a clubhouse located in the disputed area and used by appellants' children.

Plaintiff-respondent brought this action for quiet title in 1980, claiming ownership of the disputed tract by record title as well as by adverse possession. Defendants-appellants counterclaimed, contending they were the record owners and further had acquired title to the disputed area by adverse possession.

The trial court quieted title in plaintiff-respondent, concluding that respondent was the record title holder of the property in that the deed contained a latent ambiguity which could be removed by parol evidence and that respondent had proven the southeast corner called for in the two deeds to be at the corner established by Donze. The court further found that respondent had acquired title to the disputed area by adverse possession.

In their first point on appeal, appellants contend the trial court erred in denying their pre-trial motion to dismiss because respondent pleaded an action to quiet title instead of an action for ejectment.

■ The appropriate remedy for determination of a boundary line is ejectment. *Carroz v. Kaminiski*, 467 S.W.2d 871, 872 (Mo. banc 1971). An action to quiet title, however, is appropriate where one claims title to land by reason of adverse possession. *Counts v. Moody*, 571 S.W.2d 134, 138 (Mo.App.1978); *see also Walker v. Walker*, 509 S.W.2d 102 (Mo.1974) and *Miller v. Warner*, 433 S.W.2d 259 (Mo.1968) (both being actions to quiet title to real estate by adverse possession). Respondent in count two of his petition and appellants in count four of their counterclaim alleged adverse possession of the disputed area and an action to quiet title was therefore appropriate.

Next, appellants contend the trial court erred in admitting surveyor Donze's diagram, in admitting parol evidence to construe the deed descriptions, in holding that a call for a monument controls over a distance call, in considering survey evidence which utilized the Hopkin's Corner rather than the northernmost corner of U.S. Survey 253 as a starting point, and finally in declaring that respondent acquired title to the tract by adverse possession. Because we affirm the court's judgment quieting title in respondent by adverse possession, we need not address appellants' allegations of error directed towards the trial court's conclusion that a latent ambiguity existed in the deed description and that the ambiguity could be removed by parol evidence.

In court tried cases such as this, our duty is to affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

To acquire title by adverse possession under § 516.010, RSMo 1986, the party claiming title through this principle must prove the concurrent existence of five elements. *Miller v. Warner*, 433 S.W.2d 259, 262 (Mo.1968). "The possession must be (1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous, for ten years prior to commencement of the action to perfect title by adverse possession." *Walker v. Walker*, 509 S.W.2d 102, 106 (Mo.1974). Appellants contend respondent failed to prove actual possession and that the possession was hostile for a continuous period of ten years.

■ The actual possession element encompasses two relevant concepts: The claimants present ability to control the land and his intent to exclude others. *Teson v. Vasquez*, 561 S.W.2d 119, 126 (Mo.App. 1977). "Color of title" is not an element of adverse possession. *Id.*, at 126. Where, however, a deed or proceeding does not purport to vest title to the land in claimant,

he must show physical possession of the entire area claimed. *Id.*

■ The nature and location of the property and the location of the property and the uses to which it can be applied determine what acts will characterize possession as "actual." *Allen v. Wiseman,* 359 Mo. 1026, 224 S.W.2d 1010, 1013 (1949); *Ross v. McNeal,* 618 S.W.2d 224, 227 (Mo. App.1981). It follows that those acts required to support a finding of actual possession in a highly populated and developed area are not the same as those necessary to support such a finding where the land, as here, is undeveloped and sparsely populated. *Teson, supra,* at 125.

■ Any combination of continual acts of occupying, clearing, cultivating, pasturing, erecting fences or other improvements, and paying taxes on the land serves as evidence of adverse possession. *Teson, supra,* at 126. Fencing is one of the strongest indications of adverse possession although there is no per se rule that a physical barrier must mark the claimed boundary line. *Ross, supra,* at 228; *Albert v. Declue,* 526 S.W.2d 39, 40 (Mo.App.1975). " 'No more affirmative acts of ownership can be asserted than the rental of the land ... and the collection of rents thereon.' " *Johnson v. Moore,* 346 Mo. 854, 143 S.W.2d 254, 256 (1940) (quoting *Jamison v. Wells,* 7 S.W.2d 347, 348 (Mo.1928)).

Appellants contend respondent has not shown sufficient acts to constitute actual possession and that respondent has not physically possessed the entire area claimed. Appellants further contend that the deed description provides them a stronger basis for color of title than respondent.

In accordance with Rule 73.01(a)(2), all fact issues upon which no specific findings have been made by the trial court are considered to have been found in accordance with the result reached. Competent evidence showed respondent physically possessed the entire area claimed.

Photographic evidence showed Bussen's quarrying activities had extended into the disputed area since 1959 and continued to expand in the area through 1972. In 1972, Bussen entered into a lease agreement with Tower Rock, granting it the right to excavate the land. Clearing of the land in preparation for excavation was continuous. By 1978, Tower Rock had excavated out almost down to the Donze line. Appellants did not object to the quarrying of rock in the disputed area until 1978.

Furthermore, the evidence showed appellants had leased an open field for farming from Bussen as far back as 1955. Aerial photographs dating from 1959 to 1973 place the southern boundary of this field along the Donze survey line, as a sharp color demarcation is evident between the field and the land to the south that corresponds with the Donze line.

Moreover, competent evidence showed a fence ran along the Donze survey line and lined up with the white oak tree. This fence had already been in existence when Tower Rock entered into its lease agreement with Bussen in 1972. Prior to commencing quarrying operations in the disputed area, Tower Rock had placed drill steels in the ground and had graded along the Donze line so as to keep its employees within the land leased and to put adjoining landowners on notice of the boundary claimed. Appellants never objected when this line was scraped.

Regardless of the fence, there was competent evidence that appellants respected the white oak tree as marking the boundary between the parties' property. Appellant had stated that he was always told that the white oak tree marked the line and on another occasion stated that Tower Rock would not create a problem by taking down the fence because the boundary line was supposed to be between or along the fence row down to the white oak tree.

We find the evidence showed sufficient acts by respondent to constitute actual possession of the entire area claimed. It is therefore irrelevant whether appellants have stronger color of title to the disputed tract as color of title is necessary only where actual possession of the entire tract cannot be shown.

Finally, appellants contend respondent did not prove the possession was hostile for a continuous ten year period. The hostile element is satisfied where the party occupies the land in question intending to occupy it as his own. *Miller, supra,* at 263. Ignorance of the boundary line is irrelevant as an intent to take away from the true owner is not necessary. *Id.*

The evidence showed respondent occupied the disputed area as his own. As previously discussed, the area was fenced, Bussen's quarrying activities extended into the area, rents were collected from the land, both from Tower Rock and appellants, and royalties were collected from Tower Rock for rock excavated from the disputed area.

Appellants contend that respondent was not unequivocal in claiming the disputed property as his own because his lessee Tower Rock became concerned about the boundary line and had a tractor scrape a perimeter line that coincided with the Koen survey. Appellants are mistaken. The evidence was, and the trial court found, that Tower Rock scraped a line that corresponded with the Donze survey line.

Appellants also contend the possession was not hostile in that respondent's lessee Tower Rock paid appellants for damage done to their clubhouse located in the disputed area and asked their permission to remove certain fences located there. Likewise, appellants claim Tower Rock's lease with appellants for 16.33 acres along the Koen survey line negates a claim for adverse possession. They contend use of the disputed area was permissive and not hostile.

Regardless of the acts of respondent's lessee, the ten year limitations period in favor of respondent ran long before the occurrence of any of these events. The previously mentioned events occurred during 1978, at or about the time the boundary dispute arose. The trial court found that the quarrying of rock on the disputed strip of property had taken place since 1959 without objection by appellants, even though the quarry was clearly on the dis-

puted property since that time. Thus the hostile possession was for a continuous ten year period as required by § 516.010, RSMo 1986. To acquire title by adverse possession, the necessary elements must cover a consecutive period of ten years, but such period need not be the ten years immediately preceding the bringing of suit. *Moore v. Hoffman,* 327 Mo. 852, 39 S.W.2d 339, 344 (1931); *Spence v. Wrobleski,* 603 S.W.2d 91, 92 (Mo.App.1980). Point denied.

We cannot say the trial court erred in finding respondent acquired title by adverse possession. Because we affirm the trial court's judgment quieting title in respondent on the merits, we deny respondent's motion to dismiss appellants' appeal pursuant to Rule 84.04(c) for failure to supply a fair statement of the facts.

Judgment affirmed.

SMITH, P.J., and REINHARD, J., concur.