**SLAY WAREHOUSING CO., INC.,**
Plaintiff/Appellant,

v.

**Ronald A. LEGGETT, et al.,**
Defendants/Respondents.

No. 53576.

Missouri Court of Appeals,
Eastern District,
Division Five.

Sept. 13, 1988.

Thomas A. Connelly, St. Louis, for plaintiff/appellant.

Edward J. Hanlon, St. Louis, for defendants/respondents.

SATZ, Presiding Judge.

This is a tax refund case. Plaintiff, Slay Warehousing Co., Inc., sued defendants, the Collector of Revenue and Assessor for the City of St. Louis, seeking refunds of personal property taxes paid under protest. After a nonjury trial, the trial court entered judgment for defendants. Plaintiff appeals. We affirm.

In this court tried case we defer to the trial court's resolution of credibility, Rule 73.01, and we consider only those

facts and inferences favorable to the defendants, the prevailing parties. *E.g. Atkins v. Clark*, 644 S.W.2d 365, 369 (Mo. App.1982).

The tax years in issue are 1982 and 1983. During 1981, the Assessor mailed correspondence to plaintiff at 3300 South 2nd Street as directed by Mr. Amad, a representative of plaintiff. In January, 1982, a personal property tax return form was mailed to plaintiff at that address. One of the pages of the form is designed for the tax payer's change of name or address:

Please note any change of name or address below

_____

Name

_____

Address

The completed 1982 tax return, with plaintiff's supplementary "work sheets," was received by the Assessor on April 5, 1982. The form for change of name or address was blank. The return itself, apparently, was ten or eleven pages long, including the supplementary "work sheets." At the top of three of these pages, plaintiff's name was typed along with an address at 25 Victor Street.

On May 17, 1982, a notice of increase in assessment was mailed to plaintiff at 3300 South 2nd Street. The Assessor did not receive a response to this notice, and it was not returned as undeliverable. Then, by letter dated December 6, 1982 to the Collector of Revenue and received by the Assessor's office two days later, plaintiff requested the Assessor to mail its tax forms to 2214 South 7th Street.

The Assessor mailed the 1983 tax return form to plaintiff at 2214 South 7th Street. The completed form was received by the Assessor on March 31, 1983. Then, on May 16, 1983, a notice of increase of assessment was mailed to plaintiff at this South 7th Street address. This notice was not returned to the Assessor as undeliverable.

Plaintiff paid the increase in its taxes for 1982 and 1983 under protest, and, rather than seeking an administrative remedy, plaintiff filed suit in the circuit court.

The trial court found that plaintiff failed to pursue and exhaust its administrative remedies. Plaintiff, however, contends it need not exhaust its administrative remedies because it failed to receive the notices of the increases in assessment for the 1982 and 1983 tax years.

Section 138.150(1), RSMo 1986 requires the Board of Equalization to give notice of an increase in assessment "by personal notice, by mail, or ..., by publication...." Plaintiff admits it did not fill out the change of address form in its 1982 tax return. Plaintiff, however, contends that "notice" of its change of address was given by the 25 Victor Street address typed on the top of three pages of its 1982 return. This information, plaintiff contends, was sufficient "to put an ordinarily prudent person on inquiry as to ... what address the notice of increase [for 1982] should have been sent....", and, plaintiff argues, that a person is charged with the information a reasonable inquiry would have disclosed. In short, for the 1982 notice of increase in assessment, plaintiff contends it had provided "constructive notice" of its change of address from 3300 South 2nd Street to 25 Victor Street. We disagree.

■ Plaintiff's argument suffers from several fatal defects. First, in its petition, plaintiff alleged that "at all times mentioned" in its pleadings its "office and principal place of business in the City of St. Louis [was] at 2214 South Seventh St.....", not 25 Victor Street. Moreover, the trial court denied plaintiff's request to amend these allegations during trial and sustained defendants' objection to testimony establishing 25 Victor Street as plaintiff's address during 1982. On the present record, the trial court's rulings were not an abuse of discretion and, therefore, withstand attack. *Bohrmann v. Schremp*, 666 S.W.2d 30, 32 (Mo.App.1984).

Second, a secretary for plaintiff, Ms. Joy Rumpt, testified that plaintiff's offices

were at 2214 South 7th Street and that she had worked at that location from May, 1980 until May, 1984. When asked what other offices plaintiff had, she responded: "3300 South 2nd Street", although, she said, that office was closed in October, 1981. She made no mention of any office ever being located at 25 Victor Street.

Finally, the facts here neither create nor trigger a duty to inquire and discover plaintiff's correct address. Plaintiff borrows freely from various areas of the law to establish the principle of the "duty to inquire", but fails to justify the transfer and use of that principle here. However, even if we assume the principle is applicable here, plaintiff would still not prevail.

As noted in one of the various cases cited by plaintiff:

> Whether the circumstances are sufficient to give rise to a duty of further inquiry is ordinarily a question of fact.... *Hatcher v. Hall*, 292 S.W.2d 619, 625 (Mo.App. 1956).

We need not determine the validity of that statement here. Whether the issue is one of fact which creates a duty to inquire or one of fact which triggers an already existing duty to inquire is not determinative here. Plaintiff does not prevail in either case.

The record shows no more than the Assessor's Office provided a specific form for change of address which plaintiff did not use. The form is a well known bureaucratic device for insuring that a change of address will not be overlooked. Plaintiff does not show the actual circumstances under which his 1982 tax return was received, and, thus, does not show why the Assessor's Office had the duty to inquire about a change of address.

Admittedly, plaintiff does show it typed the 25 Victor Street address on two or three pages of its supplementary "work sheets," and plaintiff also relies on the following testimony of a Deputy Assessor:

Q: All right. Can you explain to me why that [1982] return was sent to 3300 South 2nd Street 63118 instead of 25 Victor Street 63104.

A: I don't know.

Q: What's the standard procedure when these personal property tax returns are received. Somebody—Now, you're saying those yellow sheets were prepared by somebody in your office, is that correct ...?

A: I presume they were. They look as though they were.

Q: Well, that purports to say that your office knew that they were—that there was a 25 Victor address, would it not.

A: That's true.

■ Plaintiff, understandably, does not claim the answers of the Deputy Assessor are admissions binding on defendants. In any event, what the 25 Victor Street address "purports" to say or mean was, ultimately, for the trial court to decide. The trial court found:

> There was no duty on the part of the Assessor to review the entire tax form for a change of address or to assume that an address placed on supplemental pages without designating the address as a change of address was a change of address, particularly when there is a designated place on the face of the form for a change of address.

We see no need to disagree with or change this common sense analysis and result. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. en banc 1976). The notice of assessment was mailed to plaintiff's address as it appeared on the Assessor's tax roll, and, on the present record, that was proper notice. *Cf. Cain v. Robinson Lumber Co.*, 273 S.W.2d 741, 744 (Mo.App.1954).

Plaintiff's attack on the 1983 assessment is neither clear nor explicit. Plaintiff argues that it also did not receive notice of this increase in assessment. This notice, however, was mailed to plaintiff at 2214 South 7th Street, in compliance with plaintiff's specific request.

In addition, plaintiff argues that the Board of Equalization lacked jurisdiction

over the assessed property because the property was not owned by plaintiff. In support of this argument, plaintiff relies on some coast guard documents introduced at trial. These documents, plaintiff apparently contends, are certificates of ownership of the property assessed, and they show, plaintiff argues, that plaintiff neither owned or "controlled" this property on January 1, 1983, the critical tax date. § 137.495 RSMo 1986.[1] Plaintiff's argument is not persuasive.

The part of the notice of assessment in issue is:

| 1. | ... | | |
|----|-----|------|-----|
| 2. | OTHER TANGIBLE PERSONAL PROPERTY: | FROM: | TO: |
| | ... | ... | ... |
| | Marine Equipment Owned | $0.00 | $550000.00 |
| | Marine Leased Equipment | 0.00 | 273750.00 |
| | ... | ... | ... |

The property in question is the "Marine Equipment Owned" and "Marine Leased Equipment." The identity of this equipment, however, is not made clear by the record. Apparently, it was either three or six "oil screw vessels." The documents introduced by plaintiff to show that it had no taxable interest in these vessels are copies of the United States Coast Guard's "General Index or Abstract of Title" and "Certificate of Documentation." According to plaintiff, these documents show that three of the vessels were transferred from Marine Builders, Inc., an Indiana Corporation, to plaintiff sometime in March, 1983, and two other vessels were transferred to plaintiff from Modern Boats, Inc., a Louisiana corporation, on May 25, 1983.

The record, however, does not clearly show that the vessels listed in the documents were, collectively, the "marine equipment" in issue. But, if even these vessels were the marine equipment in issue, plaintiff would still not prevail.

■ Plaintiff's interest in these vessels was taxable if it either "owned or controlled" them on January 1, 1983, § 137.495 RSMo 1986. The term "control", as used in this statute, has not been specifically defined. But, the term "owning and holding" used in former assessment statutes has been defined as "taxable property owned by [the person assessed], or under his care, charge or management...." *State ex rel. Rudder v. Haphe*, 31 S.W.2d 788, 790 (Mo.1930). In light of this definition, "control", as used, must at least include a lessee's interest.

■ The trial court noted at trial that plaintiff's documents, without more, simply do not show who "owned" the vessels on January 1, 1983, or, stated otherwise, failed to show plaintiff did not "own" these vessels on that date; and, certainly, the documents failed to show plaintiff was not a lessee of these vessels on that date. Plaintiff proffered its documents without a sponsoring witness, and, although these documents may well be admissible without a sponsor, they provide no information other than what is on their face. This facial information, however, falls far short of the showing necessary to prove the Board of Equalization lacked jurisdiction to assess the marine equipment in question.

JUDGMENT AFFIRMED.

CARL R. GAERTNER and GRIMM, JJ., concur.

---

1. Section 137.495 provides:
   "Every person, corporation, partnership or association, subject to taxation under the laws of this state and *owning or controlling* tangible personal property taxable by the cities shall file with the assessor of the cities a return listing all such tangible personal property so *owned or controlled* on January first of each year and estimating the true value thereof in money. (emphasis added)