**MAGNETIC COLLECTABLES, LTD., Respondent,**

v.

**ACTION PACKETS, INC., Appellant.**

**No. 55228.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

Oct. 24, 1989.

Dale E. Gerecke, Finch, Bradshaw, Strom & Steele, Cape Girardeau, for appellant.

David S. Limbaugh, Limbaugh & Payne, Cape Girardeau, for respondent.

HAMILTON, Judge.

Action Packets, Inc., (hereinafter Action Packets), a distributor of souvenirs and novelties, appeals from a judgment on its First Amended Counterclaim declaring that Magnetic Collectables, Ltd., (hereinafter Magnetic Collectables), a manufacturer of specially designed magnets, owned all but nine of forty-six contested magnet molds and denying monetary damages for conversion of the molds.

Plaintiff, Magnetic Collectables, originally filed a collection action seeking payment for magnets it had shipped to Action Packets. Action Packets filed a counterclaim, later amending it to include three counts: count I sought damages for conversion; count II sought damages for breach of fiduciary duty; count III sought a permanent injunction prohibiting Magnetic Collectables from manufacturing and selling magnets made from molds that Action Packets claimed it owned, sought immedi-

ate delivery of the molds, and requested an accounting. The trial court entered judgment for Magnetic Collectables on its Petition and on Counts I and II of Action Packets' First Amended Counterclaim. The trial court entered judgment for Action Packets on Count III of its First Amended Counterclaim with respect to nine of the forty-six disputed magnet molds. The trial court permanently enjoined Magnetic Collectables from manufacturing or selling magnets made from the nine molds, but it denied Action Packets the accounting. Action Packets appeals the decision on Counts I and III of the First Amended Counterclaim.

■ In court-tried cases we will sustain the judgment of the trial court unless no evidence supports it; unless it is against the weight of the evidence; unless it erroneously declares the law; or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This Court accepts the evidence and inferences favorable to the prevailing party and disregards contrary evidence. *Slay Warehousing Co., Inc. v. Leggett*, 762 S.W.2d 63, 63–64 (Mo.App.1988); *Nail Boutique, Inc. v. Church*, 758 S.W.2d 206, 208 (Mo.App.1988). Moreover, we defer to the trial judge's determination even if evidence might support a different conclusion. *Ware v. Ware*, 647 S.W.2d 582, 584 (Mo.App.1983). We also defer to the trial court's assessment of witness credibility. *Grommet v. Grommet*, 714 S.W.2d 747, 748 (Mo.App.1986).

■ Beginning in 1982, Action Packets bought magnets from Magnetic Collectables to sell to souvenir and gift shops throughout the country. The dispute in this case concerns an oral agreement between the parties as to the ownership of the molds used to make the magnets.

Basically two types of magnets are produced in this industry: a stock magnet and a custom magnet. A stock magnet mold remains the manufacturer's property and the manufacturer is free to sell magnets produced from that mold to any customer. A custom magnet mold is made specifically

for an individual customer according to the customer's design, and for which the customer pays a separate charge for the mold in addition to a charge for each magnet produced. Magnets made from custom molds are sold only to the customer owning the mold.

Action Packets first purchased a *Columbia* space shuttle magnet, a stock magnet. Magnetic Collectables was free to sell this magnet to any customer-distributor. Future magnet sales involved magnets specifically designed for Action Packets. For three of these (the RSRA Jetcopter, the Tilt Roter Bell XV15 Airplane, and the QSRA Plane) Action Packets paid a separately itemized mold charge. The parties agree that Action Packets is the legal owner of these molds. Magnets from these molds are custom magnets.

Classification of the other forty-three magnets is less clear. Magnetic Collectables designed them specifically for Action Packets to distribute, but it levied no separate mold charge. Warren Kaplan, the president of Action Packets, testified that Action Packets had a special agreement with Magnetic Collectables to include the charge for the custom mold in the per item price of the other magnets. He said Action Packets requested this special billing to make the paying of commissions on sales easier. The documentary evidence, however, indicated no significant difference in the price of these magnets and the price of stock magnets being sold at the same time.

Roger Mainor, president of Magnetic Collectables, testified no such agreement to include the cost of the molds in the per magnet cost existed. He testified, and the trial court found, that the companies had a special arrangement for a third type of magnet mold: a stock exclusive. The trial court found,

> 20. . . . The type of magnet which Defendant [Action Packets] purchased from Plaintiff [Magnetic Collectables] pursuant to said agreement was a *stock exclusive*. A *stock exclusive* magnet is not strictlly [sic] either a *stock* or a *custom*

magnet, as those terms are used in the industry. A *stock exclusive* magnet is a hybrid of both in that it has characteristics of both types of magnets. A *stock exclusive* magnet is one for which the customer neither pays for nor supplies camera ready art work for the design of the die or mold and does not separately pay for or acquire ownership of the mold or die. The customer does, however, acquire exclusive rights to the use of the mold provided that it places certain minimum orders for magnets made from each particular mold, and provided the customer purchases all of its injected molded magnets only from the Seller.

The trial court concluded that Action Packets acquired no ownership of the molds for thirty-seven of the magnets. These magnets were stock exclusives. The trial court did conclude Action Packets owned the three molds for which Magnetic Collectables assessed a separate mold charge and six others for which Magnetic Collectables made no separate mold charge. Magnetic Collectables had described magnets from these six molds (Spruce Goose, NASA with Extended Vector, Queen Mary, Lockheed SR–71, Army Aviation Museum, and Gulf Coast Emergency Clinic) as custom magnets in the invoices they sent Action Packets.[*]

Action Packets asserts that because the trial court concluded Action Packets owned six molds for which there was no separate mold charge that the trial court's decision is necessarily inconsistent. While the assertion is true that the trial court made no specific finding of fact related to these six magnets, Rule 73.01(a)(2) requires that "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(a)(2). *E.g.*, *A. Charles Bussen Trust v. Kertz*, 723 S.W.2d 922, 928 (Mo.App.1987). The trial court could reasonably have found from the documentary evidence before it that the parties treated these six differently. An examination of the record shows that the trial

---

[*] A seventh magnet was also described in the invoices as custom, but Respondent, Magnetic Collectables, requested that this Court not reverse this case for such a "de minimis anomaly."

court specifically questioned Magnetic Collectables' president about the use of the term "custom" on invoices for these six particular magnets.

Action Packets rejects this distinction because documents other than invoices sent from Magnetic Collectables to Action Packets identified as "custom" those magnets that were part of the thirty-seven determined to belong to Magnetic Collectables. Action Packets ignores the special significance of the invoices. Whether the manufacturer lists a separate mold charge on the invoices is a factor in determining whether magnets are custom or stock. Use of the term "custom" on the invoices is substantial evidence they were custom magnets. Further, Action Packets insists that all the magnets must be treated the same because the same agreement governed all purchases. This is, however, clearly not the case. Action Packets bought stock magnets, custom magnets with a separate mold charge, and stock exclusive magnets during its course of dealing with Magnetic Collectables. That Magnetic Collectables specifically referred to the six as custom in its invoices constituted substantial evidence that these six were treated differently.

The judgment of the trial court is affirmed.

SIMON, C.J., and DOWD, J., concur.

**K.J.B., Appellant–Respondent,**