VAN AMBURGH, *Appellant*, v. RANDALL.

### Division Two, May 16, 1893.

1. **Land Title**: OVERLAPPING SURVEYS: FIELD NOTES. Where two government surveys overlap each other, the boundaries of the one first made will control, especially where the government field notes make the boundary of the prior survey the line of the later one.

2. ——: ——. So calls for commencement of the line of the later survey which conflict with the fixed monuments and calls in the older one must yield to such prior one.

*Appeal from Cape Girardeau Circuit Court.*—HON. H. C. O'BRYAN, Judge.

AFFIRMED.

*R. B. Oliver* for appellant.

(1) The court erred in refusing the instructions asked by plaintiff. It defined the legal effect of the government field notes and fixed the location of the line between the two surveys at the point of dispute. The rule in determining the rights of the parties in case of two overlapping surveys depends on priority of confirmation of grant and not upon priority of survey. (2) While it is true that natural or known monuments will control courses and distances, it is equally true that where it is apparent that a call is false and it can be rejected and leave a sufficient description to identify the land, such false description will be rejected. Here the plat-book shows that the east line of survey 212 and the west line of 188 is a *straight line.* The courses called for make it a perfectly straight line. (3) The court erred in refusing the statements and declarations made by defendant Randall as to location of the gum

witness tree. Randall was in possession, and his statements were competent evidence. *Wilson v. Albert,* 89 Mo. 537.

*W. H. Miller* for respondent.

GANTT, P. J.—This is an action of ejectment commenced and tried in the circuit court of Cape Girardeau county. The land in dispute is a narrow strip containing only sixty-four hundredths of an acre. The suit grows out of dispute as to the boundary line between adjoining proprietors.

It was mutually stipulated that plaintiff was the owner of the west half of survey number 188 and defendant was the owner of survey number 212, each confirmed by the commissioners appointed for the ascertainment and adjustment of the titles and claims to lands in the territory of Louisiana, under the provisions of the fourth section of an act respecting claims to lands in the territories of Orleans and Louisiana, passed March 3, 1807.

The claim and survey of John Summers for four hundred and eighty arpens of land, [being the same afterwards confirmed at survey number 212, was first made to the commissioners on August 18, 1806, and was rejected on that day, but afterwards, on the nineteenth day of April, 1809, duly confirmed for four hundred and seventy-nine arpens and ninety-eight perches, as described in a plat of survey, certified the twenty-eighth of December, 1799, recorded in book C., page 270 of the recorder's office, the same being a concession of Lenon Trudeau, lieutenant governor, which survey was duly approved by M. Lewis Clarke, surveyor-general, February 19, 1851.

Plaintiff deduces title under a concession from Don Carlos Delassus, Lieutenant-Governor, and a plat of survey numbered 188 for 235 arpens, 68 perches, dated

February 19, 1802, certified October 7, 1802, confirmed February 24, 1809, approved by Surveyor-General Clark September 16, 1850.

A certified copy of the field notes to plaintiff's survey 188, on the west side, calls for the following courses and distance:

"Beginning at a post in the east boundary of *John Summers' survey numbered two hundred and twelve,* the northwest corner of survey numbered two hundred and thirty-seven in the name of Louis Lorimier under Andrew Franks, and the southwest corner of this survey, from which a sassafras twelve inches in diameter bears south forty-one degrees east sixty links distant; and a white oak twenty inches in diameter bears north seventy-seven degrees west fifty-four links distant; thence north eight degrees east, at nineteen chains and ninety links a post, the northeast corner of Summers' survey, and a corner to Lavina Mills' survey numbered three hundred and thirty, from which a gum eighteen inches in diameter bears north fifty-five degrees east forty-five links distant, and an ash twelve inches in diameter bears south five degrees west forty-eight links distant, at thirty chains and ninety links, a post, at the intersection, with the line between sections twenty-four and twenty-five in township thirty-one north, range twelve east, from which a gum eighteen inches in diameter bears south thirty-one degrees east twenty-two links distant, and a dogwood six inches in diameter bears north twenty-eight degrees west fifty-eight links distant, and the corner to those sections on the east boundary of the township bears east twenty-eight chains distant; at thirty-five chains and twenty links a gum ten inches in diameter, and at forty-eight chains and fifty links a dogwood four inches in diameter, the northwest corner of this survey and a corner to

the Lavina Mills' survey from which a white-oak thirty-six inches in diameter bears south twenty-one degrees east sixteen links distant, and a red oak eighteen inches in diameter bears north twenty-one degrees west fourteen links distant.

"Office of the SURVEYOR-GENERAL FOR ILLINOIS AND MISSOURI.

"ST. LOUIS, September 16, 1850.

"The foregoing plat and description of the survey numbered one hundred and eighty-eight are this day approved, as recorded on pages eighty-four and eighty-five of this book.

"M. LEWIS CLARKE,
"Surveyor-General."

The evidence of the surveyor Henderson and all the other witnesses tended strongly to show that an ash tree, called for in the survey of tract 212, is still standing. The surveyor also testified that according to the field notes certified to the county by the surveyor-general for survey 212, the land in dispute is a part of survey 212, but that according to field notes certified by the register of lands of Missouri, McCullough, for survey 188, there was a conflict in the courses and distances. Each however called for the same ash tree. The evidence also showed that a public road had been located along this line for thirty or forty years, and the road occupied a portion of the land sued for.

There was conflicting evidence as to a witness tree, a gum tree, that was gone, at the trial, and had been for many years.

The court instructed the jury as follows:

"The court instructs the jury that it is conceded that the plaintiff owns and is entitled to the possession of no land located in survey 212, and if from the evidence the jury believe the land in controversy to be a part of survey 212, then in that event your verdict must be for the defendants.

"The jury are instructed that before plaintiff can recover in this case he must show himself entitled to the possession of the lands in his petition described. If, therefore, from the evidence you should find the land in his petition described, or any portion thereof, is occupied and used as a public highway and said highway has been properly established or located, or the same has been in use by the general public as a highway for more than ten years last past, then in that event as to the property so included in said highway the plaintiff is not entitled to the possession and you will find for the defendants to such extent.

"The court instructs the jury that notwithstanding you should find and believe from the evidence that the eastern boundary of survey 212 and the western boundary of survey 188 overlap each other, yet if you should further find that survey 212 was first located and surveyed and boundaries and corners established, then in that event it has priority over survey 188 and your verdict should be for defendants.

"The jury are instructed that notwithstanding you may find and believe from the evidence that the courses and distances given in the field notes of surveys 212 and 188 do not correspond with the monuments, yet the monuments govern over courses and distances, and if therefore from the evidence you should believe and find that the ash tree spoken of by the witnesses is a witness tree to the corner of survey 212, and that estimating from the corner so established the land in plaintiff's petition described is thrown in survey 212, then your verdict will be for defendant."

To the giving of which instructions the plaintiff at the time excepted.

The court refused the following instruction asked by plaintiff:

"The court instructs the jury that the field notes

offered in evidence in this case locate the western boundary line of survey number 188, five degrees southwest of the ash tree called for as a witness tree at the northeast corner of survey number 222."

The jury found for defendant and plaintiff appeals.

I. The court properly instructed the jury that if they found that surveys 212 and 188 overlapped each other, and that 212 was first located and surveyed and its boundaries and corners established, then survey 212 was in law prior to 188.

Especially was this correct in view of the recitals in the field notes of the survey 188, returned to the surveyor-general. By their own terms they made the east boundary line of John Summers' survey number 212, the west line of survey 188. At the time, then, that survey 188 was made, survey 212 had already been made, and the east boundary established, and the land in survey 188 was granted with reference to that line and subordinate thereto. It was entirely immaterial to plaintiff whether the government ever confirmed that land to John Summers. It is sufficient that it only undertook to confirm and convey to him land outside of that survey 212, but when afterwards it did confirm it, plaintiff and his grantors having full notice thereof prior to the vesting of any right in them, are bound by the lines established when 212 was surveyed.

The trial court also correctly ruled that any calls for commencement on the west line of 188, that conflicted with the fixed monuments and calls in 212, must yield to the prior survey and concession. We find no error in the record. We have carefully considered the case, but have been impressed with the view that the maxim, "*De minimis lex non curat*," might very well have been applied. The judgment is affirmed. All concur.