John **SHUFFIT** and Della **Shuffit, Appellants,**

v.

James J. **WADE, et al., Respondents.**

No. 23306.

Missouri Court of Appeals,
Southern District,
Division One.

March 21, 2000.

Francis J. Siebert, Scott City, for appellants.

Stephen P. Gray, Marble Hill, for respondents.

JOHN E. PARRISH, Judge.

This is an appeal of a judgment adjudicating ownership of a strip of land claimed by John Shuffit and Della Shuffit, husband and wife, (collectively referred to as plaintiffs) and James J. Wade and Lydia I. Wade, husband and wife, Daryl G. Wade and Anita R. Wade, husband and wife, and James R. Wade and Dana L. Wade, husband and wife (collectively referred to as defendants). The trial court found defendants to be lawful owners of the real estate

in question. This court reverses and remands with directions.

Plaintiffs and defendants are adjoining property owners. Plaintiffs' land lies to the north of defendants' land. The question before the trial court was the location of the common boundary line between the respective parties' parcels of land. The disputed area consists of approximately 4.1 acres. According to a survey conducted by Richards Land Surveying for John Shuffit the length of the northerly border of the disputed area is 2,647.97 feet. Its westerly border is 77.50 feet. The length of the southerly border is 2,645.86 feet. The easterly border is 52.35 feet.

Plaintiffs purchased their property from Fred J. Hirtz[1] and Shirley J. Hirtz, husband and wife. Title was conveyed by warranty deed dated July 16, 1996. Mr. and Mrs. Hirtz acquired the property from Alpine Tree Services, Inc., a Missouri corporation, by deed dated February 15, 1995. (According to the deed Mr. Hirtz was president of the corporation; Mrs. Hirtz was secretary.)

Defendants purchased their property from Clarence Simpson and Nelda Simpson, husband and wife. Title was conveyed by warranty deed dated October 7, 1995. Mr. and Mrs. Simpson acquired the property from Bill McDowell about 1988. Mr. McDowell owned the property from 1983 to 1988.

Plaintiffs' petition alleged that defendants' predecessors in title had erected a fence on plaintiffs' property "[a] short time prior" to October 7, 1995. They contended that the fence excluded them from "over 4 acres of their property." Plaintiffs alleged that defendants were trespassing on their property. Plaintiffs requested the trial court to "establish" the boundaries of their property, issue an injunction requiring defendants to remove the fence in dispute,

1. The trial transcript spells Mr. Hirtz's name "Hertz." The warranty deed by which he and his wife acquired the property that was later sold to plaintiffs and the warranty deed to plaintiffs spell their name "Hirtz." The spelling that appears on the warranty deeds is used in this opinion.

award them damages for trespass and attorney fees.

Defendants filed a counterclaim for quiet title. Defendants' counterclaim alleged that one corner of the disputed tract, the northwest corner, had been established and marked by a survey conducted in 1952, prior to the survey on which plaintiffs relied. Defendants contended that the "previous survey controls over subsequent overlapping surveys." They asserted that the northeast corner of the disputed tract had been "placed by government surveyors"; that it had "been a common corner and boundary marker" with an adjoining landowner of land to the north and east of the disputed tract and had been in place for 30 years. On that basis defendants asserted that the northern boundary of their property was a line between those two points, that the disputed area was their property. They alleged, "alternatively," that they and their predecessors in title had acquired title to the disputed tract by adverse possession.

The trial court's judgment made the following determination:

> The Court, having considered all the evidence presented, including the testimony and credibility of the witnesses, upon being fully advised, hereby finds all issues in favor of the Defendants, and all of them, and grants Judgment in their favor. The Court further finds that Defendants are the lawful owners of a tract of real estate described as follows: . . . .

The real estate that was described was the disputed area "containing 4.104 acres in Bollinger County, Missouri." Costs were taxed to plaintiffs.

■ The parties did not request the trial court to make findings on controverted fact issues as permitted by Rule 73.01(a)(3), Missouri Court Rules (1998),[2] and no such findings were made. The trial court is, therefore, presumed to have made findings in accordance with the judgment

rendered. *Roberts Pallet Co., Inc. v. Molvar,* 955 S.W.2d 586, 588 (Mo.App.1997). Plaintiffs present three points on appeal. They contend the trial court erred in granting judgment for defendants because there was no substantial evidence rebutting the surveys that were admitted in evidence that placed the disputed tract within the boundaries of plaintiffs' property. They further contend that the trial court erred in granting judgment for defendants because defendants failed to adduce substantial evidence supporting their claim that they had acquired title to the disputed tract by adverse possession. Plaintiffs' final point asserts that the trial court erred in granting judgment for defendants because the evidence of what an adjoining property owner, Harold Glasener, recognized as the northwest corner of his property was not relevant to the issues that were before the trial court to decide.

■ Defendants attempt to take refuge behind the lack of specificity in the trial court's judgment. They assert that because the judgment found "all issues" in favor of defendants, plaintiffs' "petition failed in its entirety, regardless of the evidence brought forth by [defendants] on their counterpetition [sic]." As this court perceives defendants' argument, defendants claim that implicit in the trial court's finding for them on "all issues" is the determination that the land surveys on which plaintiffs relied in claiming the disputed tract were not credible. Their argument appears to be that because the trial court found against plaintiffs on "all issues" defendants had no burden to go forward with the evidence at trial; that, therefore, defendants are entitled to prevail on appeal.

■ Defendants' argument is misplaced. The trial court had before it defendants' quiet title claim. "In a quiet title action, where each party is claiming title against the other party, the burden of proof is upon each party to prove better title than

2. The text Rule 73.01(a)(3), Missouri Court Rules (1998), now appears in Rule 73.01(c).

that of his adversary. The claimant must rely upon the strength of his own title and not upon the weaknesses in the title of his opponent." *Ortmeyer v. Bruemmer,* 680 S.W.2d 384, 395 (Mo.App.1984).

### *Plaintiffs' Southern Boundary*

■ Plaintiffs' first point on appeal is directed to the trial court's failure to declare that the disputed area is part of the land described in the warranty deed they received from Fred J. Hirtz and Shirley J. Hirtz. That deed was admitted in evidence as Plaintiffs' Exhibit No. 5. Plaintiffs assert that the trial court erred in granting judgment for defendants because there was no substantial evidence that defendants had acquired title to the disputed area. Defendants claimed the disputed area was part of Lot 1 of the Northeast Quarter of Section 2, Township 28 North, Range 8 East in Bollinger County, Missouri, that had been conveyed to them. The evidence on which defendants relied was a plat of a 1952 survey performed by Joe A. Reilly together with a copy of field notes from that survey. Plaintiffs argue that this was not substantial evidence; that it was not persuasive.

Four surveys were admitted in evidence. Plaintiffs' Exhibit No. 1 is a plat of a 1997 survey performed by Scott Alan Richards of Richards Land Surveying for plaintiffs. Plaintiffs' Exhibit No. 2 is a plat of a 1998 survey performed by Josh W. Forsman of Geodesy Surveying for defendants. Plaintiffs' Exhibit No. 3 is a plat of a 1985 survey performed by John W. Reilly. Plaintiffs' Exhibit No. 4 is the plat of the 1952 survey performed by Joe A. Reilly and a copy of his field notes.

Mr. Richards testified at trial. He was shown a copy of the warranty deed by which plaintiffs acquired their property. Mr. Richards testified that the legal description on the deed is what he used to survey plaintiffs' property. He acknowledged that, according to the deed, plaintiffs' property contained approximately 86 acres. The survey Mr. Richards performed disclosed that the property includes 86.85 acres, that it includes the disputed area.

Plaintiffs' Exhibit No. 2, the 1998 survey performed by Geodesy Surveying, depicts the disputed area as being within the tract of real estate conveyed by Mr. and Mrs. Hirtz to plaintiffs. The fence along the northern edge of the disputed area had not been constructed when the 1985 survey was performed by John Reilly. However, the distances on the plat of the John Reilly survey for the boundaries of the land now owned by plaintiffs corresponds with the distances on the Richards survey and the Geodesy survey. The disputed area would be within the tract of land owned by plaintiffs according to the 1985 survey conducted by John Reilly.

Mr. Richards testified that he saw other monuments that correlated with the south line of plaintiffs' property according to his survey. He saw trees along the south side of the disputed area that appeared to have been blazed. This appeared to have been done in connection with earlier surveys. Mr. Richards stated that the fence along the north side on the disputed area was from 77 feet to 50 feet inside plaintiffs' property.

Mr. Richards examined the plat and field notes from the 1952 survey of Joe Reilly. He testified that he did not find the monuments referred to in the 1952 survey on its south side when he did his survey. The 1952 survey showed a distance along the south side of plaintiffs' property to be 2,700 feet, compared to 2.645.95 feet shown on the Richards survey, the Geodesy survey and the John Reilly survey. The length of the fence that extends across what defendants contend is the boundary between their property and plaintiffs' property is 2,812 feet. None of the plats of surveys that were admitted in evidence reflected the distance across the south boundary of plaintiffs' property to be more than 2,700 feet.

Defendants contend, as set forth in the petition on which this case was tried, that the fence along the northern boundary of the disputed area was placed there based upon "a government survey dated July 9, 1952 [i.e., the Joe Reilly survey]." Defendants' petition alleges, "The previous survey controls over subsequent overlapping surveys, under authority of *Van Amburgh v. Hitt*, 115 Mo. 607, 22 S.W. 636 (1893), which has never been overruled. Plaintiffs' survey, to the extent it overlaps [the 1952] survey, is not controlling."

*Van Amburgh* involved a boundary line dispute between adjoining property owners. The adjoining tracts were described and identified by survey numbers that referred to plats of surveys that had been recorded in a recorder's office. The survey numbers are "Survey 212" and "Survey 188." The designations "Survey 212" and "Survey 188" identify parcels of land that had been granted to individuals before Missouri became a state. The tracts of land were within the Territory of Louisiana.

The first tract conveyed had been Survey 212. The eastern boundary of Survey 212 overlapped the western boundary of Survey 188. Because the land described as Survey 212 had been conveyed before the land described as Survey 188 was conveyed, the conveyance of the land described as Survey 212 took priority. The grantee of the land described as Survey 188 did not acquire title to the overlap area because the overlap area had previously been conveyed to another person. It is in that sense that the survey "first located and surveyed" had priority over the later survey. 22 S.W. at 637. An attempted conveyance of land a grantor has previously conveyed passes no title. *Boxley v. Easter*, 319 S.W.2d 628, 634 (Mo.1959). The holding in *Van Amburgh* is consistent with that principle. It is of no consequence to the issues in this case.

There was testimony that Joe Reilly had been county surveyor (although the dates when he was county surveyor were not identified). Defendants' brief alludes to Joe Reilly's status as county surveyor. This is, likewise, of no consequence to the issues in this case. The fact that a survey was performed by a county surveyor does not make that survey conclusive. *Chostner v. Schrock*, 64 S.W.2d 664, 666 (Mo.1933). A survey performed by a county surveyor is subject to being "overthrown and disproved by any competent evidence." *Id.* The 1952 survey was not entitled to greater deference than later surveys simply because it was conducted at an earlier date or because it may have been performed by the county surveyor.

Three of the four plats of surveys that were admitted in evidence were consistent. Based on the Richards survey, the Geodesy survey and the John Reilly survey, the fence did not run along the boundary between plaintiffs' and defendants' properties. The 4.104 acre disputed area, according to those surveys, was within plaintiffs' property. The 1952 survey is inconclusive and indefinite. The distances are not consistent with other surveys. No bearings are given for any boundary lines depicted on the plat of the 1952 survey. The plat of the Joe Reilly survey is not substantial evidence of the location of the boundary between plaintiffs' and defendants' properties. The copy of field notes that are part of Plaintiffs' Exhibit No. 4 add nothing to what is disclosed by the plat with respect to the location of the boundary line. The trial court's reliance on the Joe Reilly survey was clearly against the logic of the circumstances disclosed by all the evidence the trial court had before it.

This court has a firm belief that the only credible evidence of the location of the south boundary of plaintiffs' property was the plats of the surveys performed by Scott Alan Richards (Plaintiffs' Exhibit No. 1), Geodesy Surveying (Plaintiffs' Exhibit No. 2) and John W. Reilly (Plaintiffs' Ex. No. 3). Point I is well taken.

*Defendants' Claim of Adverse Possession*

█ Plaintiffs' second point is directed to defendants' claim that they acquired title to the disputed area by adverse possession. Plaintiffs assert that there was no substantial evidence to support defendants' claim that they and their predecessors in title were in actual possession of the disputed area for the requisite ten-year period.

█ Defendants, as claimants by adverse possession, have the burden of proving by the preponderance of evidence the existence for the entire statutory period of each and every element of adverse possession. *Teson v. Vasquez,* 561 S.W.2d 119, 125 (Mo.App.1977). "[They] must show actual, hostile, i.e., under a claim of right, open and notorious, exclusive and continuous possession of the property for ten years. Failure to prove any one element prevents the ripening of title by adverse possession." *Id. See* § 516.010, RSMo 1994.

█ As determined with respect to Point I, the disputed area does not lie within the survey description of the land Clarence Simpson and Nelda Simpson conveyed to defendants. The land acquired from the Simpsons was Lot 1 of the Northeast quarter of Section 2, Township 28 North, Range 8 East in Bollinger County, Missouri. The disputed area lies within Lot 2. Defendants, therefore, do not have color of title. *See Teson,* 561 S.W.2d at 126; *Moise v. Robinson,* 533 S.W.2d 234, 241–42 (Mo.App.1975). "Where the claimant occupies land without color of title, in order to prevail, he must show physical possession of the entire area claimed." *Teson, supra,* at 126.

█ There are two considerations in determining if a claimant had actual possession of property for purposes of adverse possession. They are a claimant's present ability to control the land and his or her intent to exclude others from such control.

*Id.* citing *Miller v. Warner,* 433 S.W.2d 259 (Mo.1968), and *Hamburg Realty Co. v. Walker,* 327 S.W.2d 155 (Mo.1959). Defendants called two of their predecessors in title as witnesses, Bill McDowell and Clarence Simpson. Mr. McDowell acquired the property presently owned by defendants in 1983 (the parties stipulated that the date of the deed by which he acquired the property was July 22, 1983). He sold the property to Clarence Simpson in 1988. He and his sons had camped and hunted on the property during the time he owned it. He would camp there during deer season. He never farmed it. He never fenced the property. Mr. McDowell was asked if he had hunted on the disputed tract. He said he probably had.

Mr. McDowell was asked about the boundary along the north part of the property. He was asked if the location of the boundary had been questioned. He was asked the following questions and gave the following answers:

Q. Did you ever have occasion to have someone come along and ask you about this line along here near the cabin? [3]

A. Yeah, I did. A fellow from St. Louis. I never did know his name.

Q. What were you doing at the time?

A. I was hunting there. Camped out right there, me and my sons.

Q. Uh-huh. Did you have a campfire?

A. We did.

Q. Where was the campfire in relation to what he thought the line was?

A. It was right on about that line.

Q. Uh-huh. Was it to the north of the house?

A. It was on the line because the next morning he came by and said I was on his property, and the line was right down through here, and I said, "Well, that's no big deal. We'll move our fire

---

**3.** There was evidence that an old cabin was located to the west of the disputed tract. The part of the property on which the cabin is located is not claimed by plaintiffs.

over here across the line and invite you all to camp with us."

. . .

Q. Did you—Well, how far did you have to move the fire?

A. Four foot.

Q. Okay. That was okay with him?

A. It seemed to be. He left, and I didn't see him no more.

Clarence Simpson acquired the property presently owned by defendants in 1988. He bought it from Bill McDowell. Mr. Simpson put up the fence along the northern edge of the disputed area after he bought the property. He testified that he believed he built the fence in 1991. Mr. Simpson was asked if anyone told him he was building the fence in the wrong spot. He answered, "The man that owned this north 80 thought I did." Mr. Hirtz had disputed the location where the fence was being built and told Mr. Simpson he would sue him over it.

Mr. Simpson connected the fence he constructed with a north-south fence that bordered property to the east that belonged to Harold Glasener. After fencing the north side of the property, Mr. Simpson ran cattle on his property. He had cut firewood on the disputed area at some time. Mr. Simpson was asked if he had done any work on the disputed area before he put up the fence. He answered that he had just cut some brush out of the way.

Mr. Simpson and his wife sold the property to defendants in 1995. The warranty deed to defendants is dated October 7, 1995.

James Wade told the trial court that he and the other defendants used the property for hunting and running cattle. They did not know there was a controversy over the ownership of the disputed area until this lawsuit began.

This case was filed April 27, 1997. It was tried December 16, 1998. Obviously defendants have not personally possessed the disputed property for the ten years necessary to establish title by adverse possession. However, "[a]n adverse possession claimant may tack his possession to that of his predecessors in title to establish the requisite ten year period." *Conduff v. Stone*, 968 S.W.2d 200, 203 (Mo. App.1998). The predecessors in title on whom defendants rely in asserting their adverse possession claim are Bill McDowell and Clarence Simpson.

The evidence does not support a finding that Mr. McDowell intended to exclude others from control over the disputed area during the time he owned the property that defendants now own. Mr. McDowell did not fence the disputed area. Clarence Simpson built the fence along the disputed area's north side in 1991. Although Mr. McDowell had hunted on the disputed area and camped there with his sons during deer season, the evidence did not establish that he controlled the disputed area during that time. It did not establish that he intended to exclude others from it. When he was camping on the disputed area and was told to move because it was not part of his property, he complied. He moved to a location that met with the approval of the person who claimed ownership of the disputed area. Compare *Whiteside v. Rottger*, 913 S.W.2d 114, 119 (Mo.App.1995), in which a successful adverse claimant had run off a member of the family that had record title from the premises in question.

There was no evidence that Clarence Simpson possessed the disputed area by excluding others from it or that he disclosed the intent to exclude others from it until 1991 when he built the fence along its north side.

Harold Glasener had owned property to the east of plaintiffs' property since 1968. He was asked about the use of the disputed area by defendants and their predecessors in title and gave the following answers:

Q. ... And to your knowledge, did [defendants] and the Simpsons before them and the McDowells before that, did they make use of all this territory that they have under fence now?

A. The Simpsons run cattle back there.

Q. Uh-huh.

A. But I don't know anything what the other people did.

Defendants asserted they acquired title to the disputed area through adverse possession by themselves and their predecessors in title. They had the burden of showing adverse possession for the requisite period. *M. H. Siegfried Real Estate, Inc. v. Renfrow*, 592 S.W.2d 488, 491 (Mo. App.1979). They failed to show actual possession of the disputed area. Point II is well taken.

### *Disposition*

Plaintiffs' third point is directed to the relevancy of certain testimony defendants adduced at trial. It is moot in that Points I and II are dispositive.

This court holds that the evidence at trial did not support the judgment on any reasonable theory presented by the pleadings. The judgment is reversed. The case is remanded for entry of judgment consistent with this opinion. The trial court is directed to enter judgment declaring that plaintiffs are owners of the disputed area and determining the issues presented by plaintiffs' petition. The judgment should identify and enunciate findings on each request for relief included in the pleadings. *See Watson v. Moore*, 983 S.W.2d 208, 209 (Mo.App.1999).

CROW, P.J., and MONTGOMERY, J., concur.

SHRUM, J., recuses.