Greg D. ROSEN and Susan M. Rosen, Plaintiffs–Appellants,

v.

**Steve NATIONS, Defendant–Respondent.**

No. 24554.

Missouri Court of Appeals, Southern District, Division One.

April 16, 2002.

Michael A. Carter, Camdenton, for appellants.

W. Gary Drover, Camdenton, for respondent.

KENNETH W. SHRUM, Presiding Judge.

This case stems from a dispute between Greg and Susan Rosen ("Plaintiffs") and Steve Nations ("Defendant") over the location of the boundary line between their respective tracts of land. Plaintiffs' suit asked that Defendant be enjoined from using land to which they have record title. Additionally, their suit sounded in ejectment and sought damages based on trespass theory. Defendant's answer included an affirmative allegation that he owned the disputed land via adverse possession. The trial court ruled favorably to Defendant and declared that any part of the land described in Plaintiffs' deed lying north of an east-west roadway ("Hal's Lane") is vested in Defendant based on his claim of title by adverse possession. Plaintiffs' appeal presents two claims of trial court error as discussed below. We affirm in

part, reverse in part, and we remand with directions as contained herein.

## FACTS

■ We recount the evidence in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Conaway v. Faaller*, 972 S.W.2d 442, 444 (Mo.App.1998). In 1997, Plaintiffs acquired record title to the south one-half of the southeast quarter of Section 10, Township 37 North, Range 16 West in Camden County. Plaintiffs' deed description, which included several additional tracts, concluded with the phrase, "[s]ubject to all ... existing roads ..., whether of record or not."

Defendant had earlier acquired record title to land located north of Plaintiffs' farm. Specifically, Defendant bought the northeast quarter of the southeast quarter of Section 10, Township 37 North, Range 16 West in 1991. When Defendant bought this tract, he also obtained an easement from Plaintiffs' predecessor in title which read as follows: "[A]n easement of ingress and egress across the existing roadway lying in a portion of the following described land ... in the County of Camden ... to wit: The south half of the Southeast Quarter of Section 10, Township 37 North, Range 16 West."

As indicated above, a road commonly known as "Hal's Lane" figures prominently in this case and is presumably one of the roads referenced as an exception in Plaintiffs' deed.[1] The record reveals that Hal's Lane is an east-west road located across the north part of Plaintiffs' land. The traveled portion thereof can be described,

in a general sense, as starting on the west side of Plaintiffs' land (west side of S ½ of SE ¼ of Section 10) at its intersection with "High Point" road (a north-south county road) and then running east across that 80–acre tract. Most of Plaintiffs' land lies south of this road. Plats of surveys performed by Robert Arnold (which cover only the west 496.19 feet of the north line of SE ¼ SE ¼ of Section 10) show that only a small part of the SE ¼ SE 14 of Section 10 is north of the north line of Hal's Lane in the disputed area. Ownership of this narrow strip, or, alternatively, whether Defendant has access to the NE ¼ of SE ¼ of Section 10 across this strip via the most westerly driveway, are the ultimate issues in this case.

Surveyor Arnold, in preparing plats of his survey work, relied on an "original survey by Slagle, LS–189" to show the width of Hal's Lane at 30 feet with the "centerline" of the part depicted running on a course of North 89 degrees 25 minutes 36 seconds West for a distance of 435.64 feet. This course and distance call terminated at the west line of the "SE ¼ SE ¼ [of] Sec. 10." Although Arnold's plats do not show exactly how much of the SE ¼ SE ¼ of Section 10 was north of Hal's Lane, Arnold testified the strip was "approximately 16 to 18 feet" wide. Additionally, Arnold recorded on his plats that a cemetery fence (which is relevant on the issue of adverse possession) was south 89 degrees 10 minutes 19 seconds East a distance of 496.19 feet from the NW corner of the SE ¼ SE ¼ of Section 10.

Based on the evidence adduced by Plaintiffs via their surveyor, the disputed land appears to be a tract 16 to 18 feet wide

---

1. Because of the indefinite description in Defendant's 1991 easement, there was conflicting evidence about what was intended by the document. A surveyor who testified for Plaintiffs opined that the purpose of the 1991 instrument was to give Defendant an ease-

ment over Hal's Lane. Defendant, on the other hand, testified that the intent of the 1991 easement was to give him a right of ingress and egress from Hal's Lane to the south line of Plaintiff's described land, i.e., NE ¼ of SE ¼ of Section 10.

(north and south) and 496.19 feet long (east and west) in the northwest corner of the SE ¼ SE ¼ of Section 10. In explaining his plats and what they depicted, Arnold testified they contained "valid and accurate legal description[s] by which you could go out and find [the disputed] piece of property."

Although Plaintiffs' evidence via surveyor Arnold's plats showed Hal's Lane to be 30 feet wide, the actual traveled portion of the road is only 14–15 feet in width. There are two driveways leading north from Hal's Lane to Defendant's deeded land (NE ¼ SE ¼ Section 10). Plaintiffs concede that Defendant has the right to use the easterly drive ("Driveway One"), but the western driveway ("Driveway Two") is what Plaintiffs sought to prevent Defendant from using by filing the instant suit.

Plaintiffs claimed that a portion of Driveway Two lies on their property, i.e., north of Hal's Lane and south of the southern boundary of Defendant's property; consequently, they alleged Defendant should be prevented from using such access. As an affirmative defense, Defendant alleged he and his predecessors in title acquired title to that part of Plaintiffs' land north of an "old fence line" by adversely possessing the same for more than ten consecutive years. To prove his claim of adverse possession, Defendant introduced evidence that beginning at least as early as 1963 or 1964, and continuing thereafter, until late 1993 or early 1994, the disputed tract was fenced in with and used by Defendant and his predecessor in title as part of the farm operation conducted on the NE ¼ SE ¼ of Section 10, i.e., was used and claimed as part of Defendant's farm.

At trial, Plaintiffs offered little, if anything, to counter Defendant's evidence that Defendant and his predecessors in title had fenced, claimed, and exclusively occupied *part* of Plaintiffs' land lying north of Hal's Lane for more than ten consecutive years. Plaintiffs' principal position at trial and now on appeal is that (a) Defendant failed to prove that the fence upon which he relies to support his title by adverse possession claim, enclosed *all* of the disputed area with Defendant's farm, and (2) Defendant's evidence did not, as a matter of law, establish title in Defendant to any part of the disputed area south of the fence and north of the north line of Hal's Lane.

Through various witnesses, including Keith Dulle ("Dulle"), Defendant established that from 1964 (when Dulle's parents bought what is now Defendant's farm) and until 1993 or 1994 (when Defendant tore it down), a fence stood in the same location in this area and was considered the south boundary line of Defendant's farm. In this opinion, we call this the "A to B fence," with "A" referring to a point on the west side of the SE ¼ SE ¼ of Section 10 where the fence began and "B" being approximately 497 feet easterly from point A at the southwest corner of a fence that enclosed a cemetery.

Dulle visited the site just days before the trial and testified as follows regarding his observations and recollection about the A to B fence. He first became acquainted with what is now Defendant's farm in 1963 or 1964. At that time there were trees in the A to B fence line, and the A to B fence was merely a straight-line extension of fencing that ran west from point A for approximately a quarter mile. He described the B end of the fence (at the southwest corner of the fence enclosing the cemetery) as a straight line extension of a fence that ran east from point B (along the south side of the cemetery). According to Dulle, the A to B fence ran in a straight line from point A to point B and

remained in its original condition and location from 1964 until Defendant removed the fence. Although the A to B fence was no longer in place when Dulle visited the site just before trial, he testified that the fence on the south side of the cemetery was in the same location as it had always been, and thus, the point B location was the same as in 1964. He further testified that the fence running west from point A was in the same location as it was in 1964; consequently, he was able to locate point A even though the A to B fence had been removed by the time he revisited the site.

As an aid in locating the absent A to B fence based on current physical features, Dulle identified photographic exhibit T as a tree with fence wire imbedded in it at least eight inches. He further testified that the subject tree was in the fence line west of point A, and that the A to B fence had originally been a part of the fence shown in the picture and had run east on a straight line to where it connected with the fence on the south side of the cemetery (which remained in existence at the time of trial).

Regarding the location of the A to B fence with reference to Hal's Lane, Dulle was shown exhibit B (a drawing showing the A to B fence located exactly on the north line of Hal's Lane), and he was then asked: "When you first in 1964 began living on the property that is north of this fence line—and I have marked it with little red Xs and a green line—is that the fence line you're talking about?" Dulle answered, "Yes, sir." Moreover, when Dulle was asked if the tree shown in exhibit T "was part of the line fence that is depicted on Defendant's Exhibits A and B with the little red Xs[,]" he answered (without objection), "Yeah." Additionally, Plaintiff Greg Rosen at one point in the trial testified that in 1991 the A to B fence was "right on the road."

"Q. [to Greg Rosen] In 1991 when you drove down here to fix his broken phone, that fence ... was right on the road, wasn't it sir?

"A. At that time.

"Q. And you were pretty quick in your testimony to call that a boundary fence when it's where you wanted it, but now what kind of fence do you call it when it was along the road and there since 1964? Was that not a boundary fence?

"A. That was a boundary fence."

In a similar vein, Defendant testified that when he bought his property in 1991, "the roadway [was] adjacent to an old fence line."

Additional facts are recited below when required as part of our analysis of Plaintiffs' claims of trial court error.

## DISCUSSION AND DECISION

When reviewing a court-tried case in which issues of adverse possession are present, we adhere to the principles set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). *Flowers v. Roberts*, 979 S.W.2d 465, 469 (Mo.App.1998). The judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32[1]. "Further, we defer to the trial judge's superior ability to assess the credibility of witnesses." *Flowers*, 979 S.W.2d at 469.

Plaintiffs' appeal presents two points relied on: First, that Defendant's adverse possession defense failed as a matter of law because Defendant did not establish "precise" boundaries of the land claimed adversely; and, second, even if Defendant did prove he owned some of the land described in Plaintiffs' deed based on adverse possession, the land thus acquired by Defendant did not extend all the way south to

"Hal's Lane" and did not, therefore, encompass the entire length of a driveway that Plaintiffs were trying to keep Defendant from using.

■ To support their first point, Plaintiffs rely on a principle of law discussed in *Kitterman v. Simrall*, 924 S.W.2d 872 (Mo. App.1996), to the effect that a party claiming title to real estate by adverse possession must establish, among other things, "the precise boundaries of the property claimed and absent such proof, the judgment is void, rests on speculation and conjecture." *Id.* at 877[11]. *See also Hughes v. Israel*, 73 Mo. 538 548[4] (1881); *Zweemer v. Cantrell*, 823 S.W.2d 531, 535–36[5] (Mo.App.1992); *City of Gainesville v. Gilliland*, 718 S.W.2d 553, 562[1] (Mo.App. 1986). Relying on this rule, Plaintiffs contend that the judgment here must be reversed because Defendant "failed to plead or prove at trial the precise location of the boundaries of the property claimed through adverse possession;" consequently, "the judgment for [Defendant] on that theory cannot stand and the judgment must be amended accordingly."

Although the statements of law noted above are correct, the *Kitterman* opinion further stated that adverse possession claims are unique, and each case turns on its own facts including the nature and location of the property. 924 S.W.2d at 877. *Kitterman* continued its analysis of the "precise boundaries" rule as follows:

"The factual situation in *Gainesville* explains the language about requiring precise location and boundaries of property claimed adversely. There, without surveys or any evidence beyond crude sketches, the location of a rather large tract being claimed was rural ground by a fence near an airport runway. In the case at bar, the location of the claimed property was not in question, nor was there any difficulty for the trial court in establishing definite boundaries to the portion adversely possessed. . . . The precise area [Claimant] claimed was readily ascertainable. In any event, if the evidence establishes all five elements, and the location in the judgment is less than precise, then the proper course of action is to remand for further evidence on that question."

*Id.* at 877–78.

In *Lollar v. Maness*, 765 S.W.2d 695 (Mo.App.1989), the appellants complained that a judgment vesting title in plaintiff with a description that included "all land located west of the 'Lollar fence line' as shown on the plat of Stanley Layton, surveyor[,]" was so indefinite as to be void and unenforceable. *Id.* at 700. The eastern district disagreed, saying that although the trial court's description of the property line was insufficient, it was not so indefinite as to be void and unenforceable; that a description specifying by metes and bounds the location of the "Lollar fence line" could be determined. Accordingly, the court affirmed the judgment quieting title to the property west of the "Lollar fence line" in the respondent, but remanded the case with directions that the trial court take the steps necessary to locate, by metes and bounds, the "Lollar fence line." *Id.* at 700[4].

In *Longbottom v. Rains*, 632 S.W.2d 525 (Mo.App.1982), occupants of certain land south and west of a fence were held to have acquired ownership thereof by adverse possession. The judgment contained no distances, directions, or dimensions by which the tract could be located on the ground. Even so, on appeal the trial court's finding that the occupants had acquired ownership by adverse possession was affirmed. The case was remanded, however, for further evidence as to the description of the tract, including a survey.

■ Here, Plaintiffs asked surveyor Arnold if the plats of his survey work contained "a valid and accurate legal description by which [he] could go out and find that piece of property[,]" i.e., locate and describe that part of the SE ¼ SE ¼ of Section 10 shown on exhibits 1 and 2 north of Hal's Lane, and Arnold answered, "Yes." Such evidence disproves Plaintiffs' Point I assertion that the location and boundaries of the property claimed are so imprecise as to render the judgment void. We are confirmed in that view by the recital in exhibits 1 and 2 that a 30–foot right-of-way for Hal's Lane had been located via a survey by licensed surveyor Slagle.[2] Moreover, these exhibits show that surveyor Arnold had found the course and distance between the northwest corner of the SE ¼ SE ¼ of Section 10 and the cemetery fence. Contrary to Plaintiffs' Point I argument, the location of the disputed area can be determined and is not so imprecise as to render the judgment void. *See Lollar,* 765 S.W.2d at 700.

■ Plaintiffs' second point challenges the judgment based on the premise that there is a three to four-foot wide strip of land lying south of the A to B fence, but north of Hal's Lane, and as to that strip, Defendant did not bear his "burden of proving by the preponderance of evidence the existence for the entire statutory period of each and every element of adverse possession." *Shuffit v. Wade,* 13 S.W.3d 329, 335[10] (Mo.App.2000). Plaintiffs' argument fails, however, as there is evidence to support a finding that its premise is wrong, that is, there is evidence that the A to B fence was located on the north line of Hal's Lane without any part of the SE ¼ SE ¼ of Section 10 lying between the A to B fence and the north line of Hal's Lane. In that regard, witness Dulle testified, by confirming the accuracy of exhibits A and B, that the A to B fence and north line of Hal's Lane coincided. He further testified that the A to B fence was in the same location throughout, i.e., from 1964 when he first became acquainted with the farm and until the A to B fence was pushed out in 1993 or 1994. Moreover, Plaintiff Greg Rosen conceded that in 1991, when he visited what is now Defendant's farm, he traveled down Hal's Lane and "the fence was right on the road." Finally, there is Defendant's testimony that when he bought the property the "old fence [was] by the roadway" and at another point said the fence was "adjacent to ... Hal's Lane."[3] Such evidence is sufficient to support the trial judge's implicit finding that the A to B fence was located on the north line of Hal's Lane, and thus, that Defendant had acquired ownership of the disputed area by adverse possession. Accordingly, Point II is denied.

2. Belatedly via reply brief, Plaintiffs allege the 30–foot right-of-way "has no legal significance." However, Plaintiffs introduced the existence of the right-of-way by their own survey. A party cannot lead the trial court into error and then employ that error as a source of complaint on appeal. *Calarosa v. Stowell,* 32 S.W.3d 138, 146[13] (Mo.App. 2000). Moreover, arguments raised for the first time in a reply brief do not present issues for appellate review. *Pearman v. Department of Social Services,* 48 S.W.3d 54, 55[3] (Mo. App.2001).

3. We note that both Defendant and Dulle also gave testimony that would support a finding that there was a four to six-foot strip between Hal's Lane and the A to B fence. When there is inconsistency in a witness's testimony, appellate courts defer to the trial court's resolution of that conflict. The resolution of contradictions in a single witness's testimony is left to the sound discretion of the trial court as the finder of fact. *State v. Giles,* 949 S.W.2d 163, 166 (Mo.App.1997). The trial court is free to believe or disbelieve all, part, or none of any witness's testimony. *Wood v. Wood,* 2 S.W.3d 134, 138 (Mo.App.1999).

Briefly, we return to Point I. We do so because the trial court found Defendant owned via adverse possession *all* of the SE ¼ SE ¼ of Section 10 that lies north of Hal's Lane. The record does not support that finding. The evidence that Defendant had acquired ownership to some of Plaintiffs' land by adverse possession was limited to the disputed area, i.e., a strip approximately 16 to 18 feet north and south by 496.19 feet east and west out of the northwest corner of the SE ¼ SE ¼ of Section 10. No evidence was adduced concerning the situation east of the cemetery, i.e., whether there were fences east of the cemetery, where any such fences (if they existed) were located, whether Hal's Lane continued east from the cemetery, and who occupied that part of the SE ¼ SE ¼ of Section 10 east of the cemetery. Accordingly, we affirm that part of the judgment that declared Defendant had acquired title to that part of the SE ¼ SE ¼ of Section 10 that lies west of the cemetery and north of Hal's Lane; we reverse that part of the judgment that found Defendant had acquired title by adverse possession to any other part of the SE ¼ SE ¼ of Section 10; we remand the cause with directions to the trial court to take the steps necessary to locate, by metes and bounds, that part of the SE ¼ SE ¼ west of the west fence line of the cemetery line fences and north of the north line of Hal's Lane.

The judgment of the trial court is affirmed in part, reversed in part, and the cause is remanded for the reasons recited above.

MONTGOMERY, J., and BARNEY, C.J., CONCURS.